## ROBERTS *vs.* THOMAS.

Executorship is an office; and each executor is equally entitled to participate in the profits thereof; and no one has the right to seize and appropriate the whole of the assets, to the exclusion of the others.

Where there are two executors, and they both join in a credit sale of the property of the testator—the terms of the sale not being prescribed by the will—and one of them who is a trustee for a legatee, consents that his co-executor shall take charge of all the proceeds, he makes himself liable to his *cestui que trust* for her portion.

A jury is justifiable in decreeing that a trustee, who is executor also of the estate from which the trust fund is derived, who accounts to his *cestui que trust* for the yearly interest, and pays tax on the fund as trustee, has the trust fund in hand.

When a complainant is justifiable for sueing a trustee, to recover or secure a trust fund in the hands of the defendant, the solicitor's fees of the trustee will not be allowed for resisting the bill.

In equity, in Bibb Superior Court.  Tried before Judge LAMAR, at the May Term, 1861.

The questions presented for adjudication, in this case, arose out of the following state of facts, to-wit:

On the 7th of May, 1847, Reuben Roberts published his will; by the first item of which he bequeathed lands, negroes and other property to his wife, Nancy Roberts, for and during her natural life-time, or widowhood, and, at her death or marriage, the said lands, negroes and other property, to be equally divided amongst his children—the life-interest in the land to be in lieu of his wife's dower.  By the second item of the will, the testator directed that all the residue of his property, of every kind and description, should be sold, and the proceeds thereof, together with the money on hand at his death, his notes, accounts, etc., should, after paying his debts, funeral expenses, and the expenses of administering his estate, be divided into eight equal parts, or shares.  The testator bequeathed one of the shares to his son, Luke Roberts, in trust and confidence that he would place the same out at interest, and keep the same at interest until the death of Charles Thomas, the husband of his daughter, Martha Ann Thomas; and from and immediately after the death of the

said Charles Thomas, his said daughter surviving him, then in trust and confidence, that the said Luke Roberts will deliver the said part, or share, with the profits and increase thereof, to his daughter Martha Ann Thomas, to be equally divided between her and her children then living, free from all other and further trust; and in the event of the death of the said Martha Ann Thomas, before her husband, the said Charles Thomas, then said share and its increase to be equally divided amongst the other children of the testator. The will furthermore provided, that if the wife of the testator should die before the death of the said Charles Thomas, then the portion to which Martha Ann Thomas would be entitled, in the property bequeathed to testator's wife during her life or widowhood, should be vested in the said Luke Roberts as trustee, subject to the same trusts as before set forth relative to the eighth part or share aforesaid.

John Roberts and Luke Roberts were appointed executors of the will.

On the 8th of July, 1850, the testator published a codicil to his will, in which, after reciting the death of his son, William Jackson Roberts, since the making of the will, directed that his property not willed to his wife, should be divided into seven shares, after the sale of the same, among his children, and as directed in the will, with the alteration, that the share of Martha Ann Thomas shall be held in trust by Luke Roberts, for the sole and separate use of the said Martha Ann Thomas, for and during her natural life-time, the interest thereof to be paid to her annually, for the separate use and support of herself and children, and, at her death, the said part or share should be divided among her children; and her death, before the death of her husband, shall not defeat the right of her children.

The codicil further directed and provided, that the testator's daughter, Martha Ann Thomas, should have his negro woman Peggy, and her child, Leaner, with their future increase, after the death of the testator's wife, for her entire share and interest in that property willed to his wife, during her life or widowhood; the said Peggy and child, and their

increase, to be the sole and separate property of the said Martha Ann Thomas, for and during her life-time, and at her death to be equally divided among her children; no portion of the property falling to the said Martha Ann Thomas, under the will and codicil, to be subject in any manner to the debts of her husband.

The testator afterwards died, leaving the will and codicil in full force, and they were duly proved and recorded, and the nominated executors were duly qualified, and assumed the execution of the will and codicil, and the said Luke Roberts assumed the trust imposed upon him, as trustee of his sister Martha Ann Thomas.

The executors sold the property, as directed by the will, and divided the proceeds into shares amounting to $2,286. On the 31st of May, 1857, Mrs. Nancy Roberts, the wife of the testator, departed this life.

On the 10th of October, 1857, Martha Ann Thomas, by her next friend, Methvin S. Thompson, filed her bill in equity, in Bibb Superior Court, against her trustee, Luke Roberts, in which she alleged the foregoing facts, and also, that said trustee, as such, received the sum of $2,286, some five years before the filing of the bill; that he has failed to to invest the fund in any kind of security, or to put it out and keep it at interest, but has used it for his own purposes; that recently he has even failed to pay to the complainant the interest accruing on the fund, and complainant had to take his note for it; that said trustee is embarrassed, and complainant believes that he is unable to pay his debts; that he is threatening to sell and dispose of his negroes, and has no title (as he says) to the land he now claims; that he claims the right to the possession of Peggy and her child, and the right to hire them for complainant, and pay her the hire annually; that if the trustee disposes of his negroes, as he has said he would do, complainant will be left without the prospect of obtaining her rights from her said trustee.

The bill prays, amongst other things, a writ of *quia timet*, requiring the said Luke Roberts to enter into bond, with good security, obliging himself to invest the funds in his

hands, as trustee of complainant, in some safe and suitable manner, and to pay to complainant the annual interest or increase thereof; and also that he be enjoined from interrupting complainant in the possession and use of the negroes Peggy and her child; and that said Luke Roberts be removed from his said trust, and some other proper and suitable person be appointed trustee in his stead.

The bill was sanctioned, and the writs issued as prayed for.

The defendant filed his answer to the bill, in which he admits the truth of all the material allegations in the bill, except as to the sum received by him as trustee for complainant. On that subject his answer alleges: that complainant's share is correctly stated in the bill, but that he only received from the estate of testator the sum of twelve hundred and seventy-four dollars and five cents, as the trustee of complainant; that said sum of twenty-two hundred and eighty-six dollars ought to have been on hand at least by the 1st of January, 1853, the property of the estate of testator having been sold on twelve months' credit, and the will having been proven on the —— day of July, 1851; that John Roberts, defendant's co-executor, and older brother, being more conversant with business affairs than defendant, the possession of the notes for which the property of testator sold, as well as the duty of collecting the money due thereon, were confided to the said John Roberts; that many of the notes were unpaid at maturity, and that their collection was for some purpose delayed, until a short time before the death of his brother and co-executor, John Roberts, in 1854 or 1855; that in January, 1853, defendant called on his brother, and demanded payment of the legacy due complainant, and continued to call on him, from time to time, and received but one thousand two hundred and seventy-four dollars and five cents, leaving still due one thousand and twelve dollars and twenty-one cents; that his said brother died suddenly, and so soon as he could do so, he filed a bill, in Baldwin Superior Court, against the representative of his brother's estate, to recover the balance due defendant, as trustee of complainant; that said bill is still pending and undetermined; that he has

paid complainant the interest on the entire amount of her share, and has given it in and paid tax on the whole amount, because the same was drawing interest, and complainant was entitled to the same, and because the said sum was taxable, and defendant believed that he ought to return it as in his hands. As to the negroes, Peggy and child, he submits to the Court that, under the will, as trustee, it is his duty to take possession of them, as he is advised, and believes that the trust, both as to the money and the negroes, is a personal trust, and that he cannot escape responsibility to the children of complainant, who have an interest in remainder in the property, unless they were parties to this case, so as to be concluded by the decree rendered therein. The defendant further answers, that he has fully paid to complainant all the interest due on her said share of said estate, and that she is indebted to defendant three hundred and eighty-six dollars, principal, besides interest, on two promissory notes, which, together with his counsel fees in this case, he asks may be allowed him in the settlement relative to said trust funds.

The children of Martha Ann Thomas were made parties complainant by their next friend, without requiring additional answer from the defendant, they adopting the allegations of the bill. On the trial of the case, it appeared in evidence that when the property belonging to Reuben Roberts' estate was sold, and the shares of the legatees ascertained, the amount of each share was $2,286 36, and also that defendant gave in, as trustee for complainant, the sum of $2,286 26, as money and debt due from solvent debtors, in the year 1857.

The defendant introduced the receipt of complainant for the interest paid to her, and also the two promissory notes pleaded in his answer.

The jury returned the following verdict and decree, to-wit:

"We, the jury, find and decree, that there is in the hands of the defendant, Luke Roberts, trustee for complainants, the principal sum of twenty-two hundred and eighty-six dollars, that being the amount of their legacy under the will of Reuben Roberts, deceased. We also find and decree the sum of five hundred and forty-seven dollars and one cent, interest on

said principal sum due Martha Ann Thomas, up to the first day of June, 1860. We further find and decree that the two notes of Martha Ann Thomas and Luke Wilder, pleaded by the defendant, amounting to three hundred and eighty-six dollars, principal, and thirty-eight dollars and twenty-two cents interest, amounting to four hundred and twenty-four dollars and twenty-two cents, be applied as part payment of said interest, and that the notes be cancelled and given up, and that the said Martha Ann, by her said next friend, do recover of the defendant the sum of one hundred and thirty-two dollars and seventy-eight cents, it being the balance of said interest due to this date. We further find and decree that said Luke Roberts be continued as the trustee of complainant, and hold the legal title for said principal sum hereinbefore decreed; and for the negroes Peggy and Leaner, and their increase, he allowing the said Martha Ann Thomas the use and control of said negroes, for and during her life, and that said Luke Roberts do give bond and sufficient security for the faithful performance of said trust. We further decree that the complainant pay the costs of this suit."

Counsel for the defendant then moved for a new trial of said case, on the following grounds:

1. Because said verdict, finding in the hands of defendant $2,286, for complainant, is contrary to evidence, without evidence, and strongly and decidedly against the weight of the evidence in the case.

2. Because the finding is against the following charge of the Court, to-wit: " that one co-executor is not liable for moneys collected by the other, in the regular course of the administration of an estate."

3. Because said verdict is contrary to law, against the evidence, without evidence, and strongly and decidedly against the weight of evidence, in not decreeing that reasonable counsel fees should be allowed the defendant for the defence of this suit.

4. Because the verdict is not so framed, in accordance with the proofs of the case, as to enable the defendant to continue the prosecution of his said suit, in Baldwin Superior Court,

Roberts *vs.* Thomas.

against the administrator of his co-executor, for the residue of said legacy, never collected by the defendant.

The Judge presiding refused to grant the new trial, and that refusal is the error alleged in the record in this case.

B. HILL, for plaintiff in error.

POE, GRIER & POE, for defendants in error.

*By the Court.*—LUMPKIN, J., delivering the opinion.

Was the decree rendered in this case in accordance with the law and testimony?

It is argued that John Roberts, as executor, had a right to take possession of all the assets, and that having done so, Luke Roberts is not liable until and unless he recovers the balance coming to his sister, Mrs. Thomas, out of the estate of John Roberts, his co-executor. Is this so? The sale was the joint act of both. What right had Luke Roberts to consent that the whole proceeds should go into the hands of his brother? He had an important trust to perform under the will of his father, to-wit: to recover the legacy coming to Mrs. Thomas, and to invest it, paying her over the accruing interest. No matter where the contrary doctrine is asserted, I deny that either of two executors is entitled to take possession of the whole of the assets of the testator, to the exclusion of the other. To be appointed executor is to be invested with an office of profit. What right has either to appropriate the whole to himself? But no such case is made in this record. Luke Roberts consented that John Roberts should take charge of everything. This was his own act, for which he is and should be held responsible, under the facts of this case. He had the right to allow his own portion to go into the hands of his co-executor, but he could not consent for his sister's portion to be thus appropriated. As it respects this, he had a duty to discharge. She could not act, only through and by him; he was bound to act for her.

Again, the will of the testator does not direct a credit sale. It would rather seem that a cash sale was contemplated; the proceeds, together with the *cash on hand*, was directed to be divided among the legatees, and the share coming to Mrs. Thomas was to be loaned out by Luke Roberts, her trustee. Be this as it may, the executors, in selling upon time, exercised their own discretion. It was the joint act of both, and each is responsible.

Waiving this aspect of the case, and also the question of diligence in collecting this fund, eight years having elapsed since the sale notes fell due, the defendant has paid interest yearly on the whole amount, $2,286, and tax, as trustee for Mrs. Thomas, on that sum, which ought to have been paid by the executor, if the fund still remained in his hands. I say, did not these circumstances authorize the conclusion that the whole legacy was turned over? If so, Mrs. Thomas was justifiable in filing her bill, and the jury, in decreeing for the whole amount of $2,286, and also in disallowing attorney's fee for defending this proceeding.

As to so much of said decree as compels the trustee to give security, we should dislike, in any case, to control the discretion of the Judge and special jury in a matter of this sort. The trustee may be worth three times the amount of the trust fund, still he admits his property is not very large, and that he has sold a tract of land and three negroes. In other words, he is converting his visible property into money and choses in action, which may be much more readily wasted or made away with than land and negroes.

As to the *pecadilly* amount of interest, it is too small, if true, to require correction.

As to the complaint, that the decree is so shaped as to hinder the defendant from recovering from John Roberts' estate the balance unaccounted for, we have only this to say, that the decree could be amended without prejudice to the rights of the complainant. No objection could be interposed. But suppose this cannot be done, the fault lies at the door of the defendant, by neglecting to retain, as he had a right to do, enough in his own hands for his *cestui que trust*, or for

not proceeding more promptly to recover it.   Courts cannot protect parties, however innocent, from the consequences of their own wilful neglect or mismanagement.

Judgment affirmed.